JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant, William Ridley, appeals his conviction by a jury on one count of felonious assault in violation of R.C. 2903.11, a second degree felony[1]. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Defendant was indicted for committing felonious assault and domestic violence against his girlfriend, Melinda[2] Rogers ("Rogers"). On June 18, 2002, Officers Hategan and Fore testified they were dispatched to a West 49th Street address and, when they arrived there, Rogers, in pain, was crying and being treated by EMS personnel. Hategan testified that, when he interviewed Rogers in the back of the EMS vehicle, she was crying and visibly emotional. She told him she and her boyfriend, William Ridley, had argued, he assaulted her with a golf club as she was leaving the house, and he threatened to kill her.
 {¶ 3} Fore testified that he was standing outside the EMS vehicle and could hear Hategan interviewing Rogers. Fore stated he heard Rogers identify defendant as the person who hit her with the golf club. Both officers testified they observed Rogers' injury, which they both described as a golf club-shaped welt on her upper back. Fore also stated the golf club was later found in the front yard of the house.
 {¶ 4} The victim did not testify. However, Detective Montalvo, an officer with the city's domestic violence unit, interviewed Rogers on June 19, 2002, the day after the incident. During that interview, Montalvo obtained the birth date and social security number of Rogers' assailant. From this information, Montalvo testified that she was able to obtain a photograph from the Bureau of Motor Vehicles ("BMV"). On the witness stand, Montalvo identified defendant as the same person depicted in the BMV photo. Approximately one week after the incident, defendant was arrested at the West 49th Street address.At trial, defendant testified he was not at Rogers' house on the 18th and not the person who assaulted her that day. However, when asked where he was that day he could only say he "may" have been washing his car at an aunt's house. Defendant denied owning any golf clubs and speculated that one of Rogers' other boyfriends must have hit her. On direct examination, defendant admitted to prior convictions including a 1996 conviction for assaulting a police officer and a 1999 conviction for domestic violence. Rogers did not testify at defendant's trial.
 {¶ 5} Defendant appeals his conviction for felonious assault and assigns the following errors for review.
ASSIGNMENT OF ERROR NUMBER ONE:
 {¶ 6} The trial court erred by admitting the out-of-court statement of Melina Rogers due to it being hearsay.
 {¶ 7} Defendant argues the trial court erred by allowing officers Hategan and Fore to testify about what Rogers said in the back of the EMS vehicle. Defendant says Hategan's testimony that Rogers identified defendant as the person who hit her with a golf club is hearsay and therefore inadmissible. Defendant also claims that Fore's description of what he heard Rogers tell Hategan is also hearsay.
 {¶ 8} Defendant argues, moreover, that Rogers' hearsay statements do not fall under the excited utterance exception to the hearsay rule, because by the time Rogers made the out-of-court identification of defendant she had already composed herself. Defendant calculates that sixteen minutes passed between the initial call to police on June 18, 2002 and the time Rogers actually made the statements. Hategan, however, testified he and Fore arrived on the scene somewhere between five and ten minutes after receiving the dispatch call. Nonetheless, defendant says too much time passed for the statements to qualify as excited utterances.
 {¶ 9} The out-of-court statements Rogers made are hearsay. The question, however, is whether those statements qualify as excited utterances under Evid.R. 803(2). To be admissible under Evid.R. 803(2), a statement must concern "`some occurrence startling enough to produce a nervous excitement in the declarant,' which occurrence the declarant had an opportunity to observe, and must be made `before there had been time for such nervous excitement to lose a domination over his reflective faculties.' State v. Huertas (1990), 51 Ohio St.3d 22, 31, 553 N.E.2d 1058, quoting Potter v. Baker (1955), 162 Ohio St. 488, 124 N.E.2d 140, paragraph two of the syllabus." State v. Braden, 98 Ohio St.3d 354,2003-Ohio-1325 at ¶ 103. The admissibility of such statements does not depend upon the availability of the declarant as a witness. Evid.R. 803.
 {¶ 10} "An appellate court should allow a wide discretion in the trial court to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event.State v. Duncan (1978), 53 Ohio St.2d 215, 219, 7 Ohio Op.3d 380,373 N.E.2d 1234." State v. Axson, Cuyahoga App. No. 81231, 2003-Ohio-2182, ¶¶ 37-39 citing State v. Moulder, Cuyahoga App. No. 80266, 2002-Ohio-5327; State v. Wallace (1988), 37 Ohio St.3d 87;524 N.E.2d 466.
 {¶ 11} In the case at bar, we must determine whether, pursuant to Evid.R. 803(2), (1) Rogers' statements were related to a startling event or condition (2) the statements were made while she was under the stress of excitement; and (3) her stress was caused by the event or condition. On the record before us, we conclude that Rogers' out-of-court statements qualify as excited utterances. It is undisputed that Rogers was struck in the upper left region of her back with a golf club. The blow was forceful enough to leave what witnesses described and Exhibits 3, 4, and 7 show as a golf club-shaped welt on her back. This injury qualifies as a startling event or condition. Hategan and Fore testified that when they arrived at the scene, Rogers was just being helped into the EMS vehicle. When Hategan spoke to her, Rogers was still in pain, crying and emotionally upset. Regardless of whether it took police five minutes or sixteen, when Hategan interviewed Rogers, she was still under the influence of the incident and the pain of the injury. Huertas, supra. The second and third elements of the rule are therefore satisfied. Accordingly, we conclude that Rogers' statements, though hearsay, are excited utterances and the trial court did not err in admitting these statements at trial. Defendant's first assignment of error is overruled.
ASSIGNMENT OF ERROR NUMBER TWO:
 {¶ 12} The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 Ohio Rules of Criminal Procedure.
ASSIGNMENT OF ERROR NUMBER THREE:
 {¶ 13} Appellant's conviction for felonious assault was against the manifest weight of the evidence.
 {¶ 14} Because assignments of error two and three involve the evidence presented at trial, we consider them together.
 {¶ 15} First, defendant claims the trial court erred in denying his Crim.R. 29(A) motion for judgment of acquittal on the charge of felonious assault. We disagree.
 {¶ 16} Crim.R. 29(A), which governs motions for acquittal, provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. Pursuant to Crim.R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. A Crim.R. 29(A) motion for acquittal "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 19, 23, 514 N.E.2d 394; State v. Jordan, Cuyahoga App. Nos. 79469 and 79470, 2002-Ohio-590. The standard for a Rule 29 motion is virtually identical to that employed in testing the sufficiency of the evidence.
 {¶ 17} In State v. Thomas, Cuyahoga App. No. 79565, 2002-Ohio-1085 this court set forth the relevant standard of review: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."Thomas, supra, citing State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
 {¶ 18} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486,124 N.E.2d 148. "A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence which goes to all the essential elements of the case." Thomas, supra citing Cohen v. Lamko (1984), 10 Ohio St.3d 167, 462 N.E.2d 407. If there is substantial evidence in support of a verdict, an appellate court may not substitute its judgment for that of the jury as to weight and sufficiency. Thomas, supra.
 {¶ 19} Defendant also argues that his conviction for felonious assault is against the manifest weight of the evidence. On appeal, this issue goes beyond the mere legal sufficiency of the evidence because we must consider the actual weight of the evidence. In State v. Nields
(2001), 93 Ohio St.3d 6, 752 N.E.2d 859, the court held that, as to the manifest weight of the evidence, the issue is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v. Getsy
(1998), 84 Ohio St.3d 180, 193-194, 702 N.E.2d 866, citing State v. Eley
(1978), 56 Ohio St.2d 169, 10 Ohio Op.3d 340, 383 N.E.2d 132, syllabus. In [State v.] Thompkins, [(1997), 78 Ohio St.3d 380], the court illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594, "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" State v. Poole, Cuyahoga App. No. 80150, 2002-Ohio-5065, at ¶ 25; State v. Brooks (1989), 44 Ohio St.3d 185.
 {¶ 20} In the case at bar, the state was required to prove each and every element of felonious assault as defined in R.C. 2903.11.
 {¶ 21} R.C. 2903.11, felonious assault, provides in pertinent part as follows:
 {¶ 22} (A) No person shall knowingly: (1) Cause serious physical harm to another * * * ; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *, as defined in section2923.11 of the Revised Code.
 {¶ 23} R.C. 2901.22(B) defines "knowingly" as follows: A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.
 {¶ 24} "Deadly weapon" is defined in R.C. 2923.11(A): Deadly weapon means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.
 {¶ 25} In the case at bar, defendant insists that a golf club is not a deadly weapon. We reject this claim because this court has previously held that similar pole-like objects can indeed be regarded as deadly weapons under the statutory definition. In State v. Davis, (June 18, 1998), Cuyahoga App. No. 72820, 1998 Ohio App. LEXIS 2741, this court explained: * * * evidence that one was struck with a metal pole is sufficient to demonstrate that a deadly weapon was used. That is, R.C.2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specifically adopted for use as a weapon, or possessed, carried, or used as a weapon." In addition, other pole-like objects have been determined to be "capable of inflicting death" so as to constitute a deadly weapon in connection with a charge of felonious assault. See State v. Miller, 1996 Ohio App. LEXIS 2721 (June 27, 1996), Cuyahoga App. No. 69309, unreported (pool cue); State v.Martin, 1993 Ohio App. LEXIS 5870 (December 9, 1993), Cuyahoga App. No. 64421, unreported (hand gun used to "pistol whip"); State v. Pope,
1990 Ohio App. LEXIS 4557 (Oct. 4, 1990), Logan App. No. 8-89-19, unreported (handle of toilet plunger); and State v. Shannon, 1987 Ohio App. LEXIS 8650 (Sep. 2, 1987), Lorain App. No. 4216, unreported (stick or pipe). Id., at *13.
 {¶ 26} Viewing the evidence in a light most favorable to the prosecution, we conclude that there was sufficient evidence for the jury to find that defendant committed felonious assault against Rogers. The testimony of Hategan, Fore, and Montalvo connects defendant to the incident.
 {¶ 27} All three witnesses testified that defendant was the person Rogers identified as her assailant. The record shows that there was an argument between Rogers and defendant during which Rogers left the house. Defendant followed her outside with a golf club and struck her in the back. The blow was so forceful that it left a clear imprint on her upper back that, one day later, was still swollen and red, according to Montalvo and the photographs presented at trial. The photographs also show that, had the blow struck Rogers a few inches higher and more to the right, it would have hit her in the head area and thus could have inflicted death.
 {¶ 28} We conclude that defendant's purpose was to cause her serious physical harm with the golf club, which the state proved to be a deadly weapon capable of inflicting death. From the evidence adduced at trial, we further conclude defendant committed overt acts which demonstrate a firm purpose to commit felonious assault against Rogers. Accordingly, the state proved each and every element of the offense of felonious assault beyond a reasonable doubt.
 {¶ 29} On the record before us, there is substantial evidence upon which the jury could reasonably conclude that all the elements of the crime charged against defendant were proved beyond a reasonable doubt. The evidence, therefore, is legally sufficient to sustain the jury's verdict as a matter of law. The trial court did not err in denying defendant's Crim.R. 29 motion for acquittal, nor is the jury's verdict against the manifest weight of the evidence. Defendant's second and third assignments of error are overruled.
Judgment accordingly.
FRANK D. CELEBREZZE, JR., P.J., and COLLEEN CONWAY COONEY, J., concur.
[1] Defendant stipulated to and was also convicted of one count of domestic violence in violation of R.C. 2919.25, a fifth degree felony. Defendant is not appealing his conviction for domestic violence.
[2] The record sometimes shows the victim to be "Melina" instead of Melinda.